**In re Anonymous No. 29 D.B. 77**

Disciplinary Board Docket no. 29 D.B. 77.

ANDERSON, *Member*, April 11, 1978—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I.  HISTORY OF PROCEEDINGS

On December 28, 1976, the within proceeding was referred to "the Clerk of the Disciplinary Board of the Supreme Court of Pa. for investigation, hearing and recommendation pursuant to Local Rule 22(g)," by the Honorable [   ], U.S. District Judge for the [   ] District of Pennsylvania. The petition arose out of respondent's plea of guilty on October 7, 1976, to the charges set forth in the criminal information filed at no. 76-142 in the U.S. District Court

for the [ ] District of Pennsylvania, which charged respondent with violations of the Act of June 25, 1948, 62 Stat. 701, 18 U.S.C.A. §401(1) and (2).

Respondent pleaded to a misdemeanor of criminal contempt, in that "he knowingly misbehaved in the presence of the U.S. District Court and so near thereto as to obstruct the administration of justice," and was fined in the amount of $2,000. The petition for discipline was filed on August 1, 1977, by chief disciplinary counsel and docketed at no. 29 D.B. 77. The petition for discipline averred that respondent had violated the following Disciplinary Rules of the Code of Professional Responsibility:

(a) Disciplinary Rule 1-102(A)(3)—dealing with illegal conduct involving moral turpitude;

(b) Disciplinary Rule 1-102(A)(4)—dealing with conduct involving dishonesty, fraud, deceit, or misrepresentation;

(c) Disciplinary Rule 1-102(A)(5)—dealing with conduct prejudicial to the administration of justice;

(d) Disciplinary Rule 1-102(A)(6)—dealing with conduct that adversely reflects upon an attorney's fitness to practice law;

(e) Disciplinary Rule 7-102(A)(6)—dealing with the participation in the creation of evidence when the attorney knows it is obvious that the evidence is false; and,

(f) Disciplinary Rule 7-102(A)(7)—dealing with counselling or assisting his client in conduct that the attorney knows to be illegal or fraudulent.

An answer to the petition for discipline was filed on August 22, 1977, and at that time was referred to disciplinary hearing committee [ ]. The answer to

the petition for discipline filed for respondent substantially admitted the allegations contained therein. A hearing was scheduled for October 24, 1977, before disciplinary hearing committee [ ], composed of [ ], Chairman, [ ], and [ ]. The committee took testimony from petitioner by stipulation and exhibits. Respondent was represented by counsel and testified in his own behalf.

The report of the hearing committee was submitted on December 9, 1977, with a recommendation of public censure, and no objections were filed within the prescribed time by either party. The hearing committee unanimously decided that respondent's conduct involved violations of Disciplinary Rules 1-102(A)(4), 1-102(A)(5), and 7-102(A)(6). A majority of the committee also found respondent's conduct involved a violation of Disciplinary Rule 7-102(A)(7), and it did not involve a violation of the other disciplinary rules as contained in the petition for discipline.

## II.  STATEMENT OF THE FACTS

Respondent, [ ], is 35 years of age and is a resident of the city of [ ]. He is married with two children. He was admitted to the practice of law in the Commonwealth of Pennsylvania in 1967, and has practiced in [ ] County. His specialization of practice has been in the field of criminal defense. He is a self-employed practitioner. He has been extremely active in the American, Pennsylvania and county Bar Associations. His activities in the community have been substantial and he has lent a great deal of time in helping people understand the law and its various facets. He has taught criminal law to high

514

school students and has been a lecturer in the criminal law field to newly admitted attorneys.

In late May of 1974, respondent was engaged to represent [A]. [A] had been indicted along with his employer [B] by a Federal grand jury on two counts of interstate transportation of obscene motion pictures and other related charges. [B] agreed to pay for [A's] defense because he had been the manager of [B's] theatre at the time of the arrest. [B] agreed to pay the $5,000 fee quoted by respondent.

Shortly thereafter [B] discharged [A] from his employ, but continued to be responsible for his legal fees. [A], after his termination, approached respondent in a very emotionally disturbed manner. Respondent felt it was the responsibility of [B] to keep [A] employed at least until the end of the legal proceedings. It was respondent's belief that [A] had been wrongfully terminated. Some time thereafter, in a conversation with [A], respondent stated that he was going to meet with [B] and his attorney, [C], Esq. and would demand that [B] continue with [A's] wages. He stated to [A] that he would threaten [B] by telling him that [A] would become a government witness if [A] was not paid the salary. At no time did respondent intend to have his client testify against [B] and he falsely represented those facts to [C] and [B]. Respondent in fact believed at all times that he could win this case and exonerate his client. At the subsequent meeting, respondent found there was adequate reason for dismissing [A], but he still insisted on the payments to [A]. The amount of money discussed was $250 to $200 per week, although respondent was willing to accept an amount of approximately $100 a week net. The payments to [A] were to be made through respondent's office.

In November of 1974, [A] was convicted with [B] by a jury of all of the charges and was subsequently placed on probation. In May of 1975, [A] was called to testify before a Federal grand jury in [   ]. [A] was granted immunity and instructed by respondent to answer all of the questions truthfully. He further revealed to the grand jury the facts of [B's] payments to him and the manner in which they had been paid. Shortly thereafter, respondent was questioned by representatives of the United States Attorney's Office about the testimony of [A] which referred to the payments made and the manner in which these payments were secured. In the meantime, respondent contacted defendant [B], who had previously testified before the same Federal grand jury in [   ], and discussed what his testimony had been. [B] revealed that he had not testified as to the payments. It was decided between them that their recollection of the meeting was that the payment which [B] made to [A] had been in the form of severance pay and not to stop him from making a plea bargain with the government. Respondent also had a discussion with [C] and it was suggested that her recollection of their discussions was the same as that of [B's] and respondent. Respondent in turn related this false story of severance pay to the Federal authorities in a statement dated July 14, 1975. Respondent admitted in a second statement given on May 20, 1976, he knew the statements to be false and he did attempt to cover up any impropriety on his part in curing these illicit payments to [A]. Subsequently, the criminal information was filed as no. 76-142 in the U.S. District Court for the [   ] District of Pennsylvania, which charged respondent with violations of 18 U.S.C.A. §401(1) and

(2), to which he pleaded guilty in October of 1976, and was fined the sum of $2,000.

Respondent, in his answer filed on August 22, 1977, to said petition for discipline, admitted all of the factual allegations contained in the petition for discipline.

## III.  DISCUSSION

There is no question of respondent's wrongful activities in this case. They date from the false assertion to [C] and [B] for the moneys to secure the silence of [A]; the agreement to give a false explanation of what had occurred at the [B-C] meeting, coupled with the inducement of [C] to go along with his recollection; and the false statement given to the Federal authorities as to the improper payments. He was well aware that [B's] recollection of the meeting as regards the "severance pay" was incorrect.

The actions of respondent are such that, under most circumstances, the board would find no problem with recommending a suspension. The principal reason for agreeing with the very excellent recommendation and conclusions reached by the hearing committee, is the motivation and intent of respondent in pursuing the course of action which he did take. There was no attempt to receive or to extract additional remuneration for himself, but in fact he was guided by a concern for the welfare of his client. It is shown in the notes of testimony that respondent became a little too concerned with the ability of his client to weather the litigation situation without having some moneys coming in on a regular basis. His request of [C] and [B] was for funds to be supplied through the length of the

litigation. He never personally demanded moneys to keep control over [A], although he did misrepresent his own intentions in regard to this case to insure that [A] would receive the moneys he felt were necessary. Respondent believed he could win this case for his client and at no time planned on accepting any plea bargain from the government. Neither the hearing committee nor the board questions respondent's truthfulness as to his reasons for going to trial and there is no question that he did not bargain away any legal stratagem of his client.

The motivation is also important in respondent's actions in deliberately misrepresenting facts to the Federal authorities. There is no doubt, and the record is replete with the fact, that respondent panicked. He had come to understand the problems he had created for himself and for the others and at that moment weakened and gave false testimony to the Federal authorities. To respondent's credit, he later voluntarily gave a statement in which he admitted his part in the payments and his deliberate deception of the authorities. There is always the question before this board where there is a misdemeanor conviction whether the acts involved arise to the point of moral turpitude. In this case, the essential elements necessary for a showing of moral turpitude were not present.

Respondent's actions have reflected an undesirable deviation from those activities expected of members of the legal profession. But in looking at this matter from its overall scope, it is seen as more of a lapse within respondent's conduct of his legal career and not so fatal a defect as to call for serious discipline. It is a matter which cannot be dismissed without allowing him to know that the conduct he has engaged in will not be condoned and is of a

serious nature so that it must be exposed and dealt with in order for other members of this profession not to indulge in this same type of conduct. Respondent must know he has a duty to his profession not to engage in any activities, for whatever reason, which could bring discredit upon his profession or himself. He cannot be guided by feelings of emotion which lead him to commit fraudulent activity, no matter how well meaning. Therefore, the board agrees with the committee's findings, that the respondent's conduct involved violations of Disciplinary Rules 1-102(A)(4), 1-102(A)(5), 7-102(A)(6), and 7-102(A)(7).

## IV.  RECOMMENDATION

The disciplinary board respectfully recommends to your honorable court that the unanimous recommendation of the hearing committee be adopted and that respondent, [    ], be subjected to public censure by the Supreme Court.

## ORDER

EAGEN, *C.J.*,—And now, May 8, 1978, the report and recommendation of the disciplinary board of the Supreme Court filed April 11, 1978, is accepted; and it is ordered and decreed, that said [respondent] of [    ] County, be subjected to public censure by the Supreme Court, as provided by Rule 204(3) of the Rules of Disciplinary Enforcement, at the session of this court commencing September 25, 1978, at [    ].

Mr. Justice Larsen did not participate in this matter.